**Charles SCHWAAB, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SCHMIDT BAKING COMPANY, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 16, 2003.

Decided Sept. 26, 2003.

Bruce W. Miller, Philadelphia, for petitioner.

Sandra R. Craig, Philadelphia, for respondent.

Before: PELLEGRINI, Judge, COHN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge COHN.

This is an appeal by Charles Schwaab (Claimant) from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) to grant Schmidt Baking Company, Inc.'s (Employer) petition to terminate Claimant's benefits and its petition to review, allowing Employer to assert a subrogation lien and obtain reimbursement from Claimant. Claimant challenges the termination, and also argues that Employer cannot assert a subrogation lien against Claimant's recovery of uninsured motorist benefits from Employer's policy.

Claimant received both workers' compensation benefits and uninsured motorist benefits for injuries suffered on February 14, 1997, when he was involved in a motor vehicle accident while driving a bread truck for Employer. He received workers' compensation benefits for "acute lumbar strain and sprain" and "acute left L5 nerve root irritation," when his claim petition

was granted on March 4, 1999. Subsequently, an Uninsured Motorist Panel awarded Claimant $700,000.00. The claim for uninsured motorist benefits was brought against *Employer's* uninsured motorist policy, provided by Kemper Insurance Company (Kemper), who is also Employer's workers' compensation carrier. On September 5, 2000, Employer filed its petition to terminate, alleging a full recovery as of June 6, 2000, and its petition to review seeking to obtain reimbursement due to its alleged subrogation right. Employer's request for supersedeas was denied a few weeks later. The WCJ granted the termination petition effective June, 6, 2000, and the petition for review, directing that Claimant reimburse Employer for the amount of the subrogation lien (approximately $118,000). (Adjudication, Conclusion of Law (COL) No. 3, Finding of Fact (FOF) 9.) On appeal, the Board affirmed and Claimant then appealed to this Court.

 On appeal, Claimant argues that 1) the WCJ erred in granting the termination petition; 2) Employer is not entitled to a subrogation lien on uninsured motorist benefits; and 3) the subrogation lien is untimely because it was asserted two and one half years after the accident and trial in the underlying tort action. We shall examine these issues seriately. Our scope of review where, as here, both parties have presented evidence is limited to whether the findings of fact are supported by substantial evidence and whether there has been any constitutional violation or legal error. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth.436, 550 A.2d 1364 (1988). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *York Terrace/Beverly Enterprises v. Workmen's Compensation Appeal Board (Lucas)*, 140 Pa.Cmwlth.75,

591 A.2d 762, 764 n.5 (1991). It is within the sole province of the WCJ to make credibility determinations. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa. Cmwlth.1995).

 Claimant challenges the termination of his benefits for two interrelated reasons pertaining to the competency of the evidence upon which the WCJ relied: Claimant's testimony of continuing pain and the medical information derived from his CAT scans. First, Claimant argues that Employer did not meet its burden for the termination petition because the WCJ found Claimant's testimony credible that he continues to have the same pain that he did at the time of the accident, *i.e.*, pain in his lower back, going down to his ankle, and numbness in his right leg just above the knee. The pain is constant and he stated that there has been no improvement in his condition. However, Employer argues that because the WCJ found credible the medical testimony of its expert, Dr. Ronald B. Greene, M.D., who opined that there was no objective evidence of any work-related pain, there was substantial evidence to support the WCJ's determination.

Claimant presented the testimony of Dr. Paul J. Sedacca, M.D., an internist, who first saw Claimant for his work injuries on March 3, 1997, and whom Claimant has been seeing every two months. This witness stated that he has seen no change in Claimant's condition at all and that he has recurrent episodes of spasm and pain. Claimant's current diagnoses include "a cumulative trauma syndrome, plus a clinical aggravation of a preexisting lumbar disc pathology." (Adjudication, FOF 11(d).) He opined that Claimant could not return to his pre-injury job as a truck driver, but could perform "very light or sedentary work." Finally, this witness

stated that Claimant's lumbar spasm, positive straight leg raising test and pain on flexion were due to his pre-existing herniated disc.

Employer presented the testimony of Dr. Greene, a board-certified orthopedic surgeon, who examined Claimant and found no objective signs to support Claimant's complaints and no evidence of neurological problems, mechanical malfunction or dysfunction. He opined that, as of June 6, 2000, the examination date, Claimant had completely recovered from any and all lumbar strain that he *might* have suffered in the accident and from any and all acute left L5 radiculopathy that he *might* have suffered from that accident. He felt no restrictions were necessary as a result of the work injury, and opined that Claimant could return to his pre-injury job. He disagreed with Dr. Sedacca that Claimant was suffering from any cumulative trauma syndrome and noted that a CAT[1] scan taken in May 1996 (before the injury),[2] when compared with post-injury CAT scans, revealed that there were no differences, and that this belied Dr. Sedacca's opinion that Claimant was suffering from cumulative trauma syndrome. He also stated positively that there was never a herniation at L4–5, and that Dr. Sedacca was incorrect on this point. He accepted the fact that Claimant had pain, but attributed it to "degenerative arthritis in his facet joints, which can cause stiffness, pain and discomfort." (Adjudication, FOF 12(k).)

Although the WCJ found the testimony of Claimant to be "credible and persuasive," to the extent that the two medical experts' opinions conflicted, he resolved credibility in favor of Dr. Greene. Specifi-

cally, he found that Dr. Greene disagreed with Dr. Sedacca that Claimant was suffering from cumulative trauma syndrome, and indicated that there was absolutely nothing in Claimant's medical records that "would even remotely imply" that Claimant suffered from such a syndrome. (Adjudication, FOF 12(g).) The WCJ was also persuaded by Dr. Greene's testimony that there was no difference between the CAT scans taken in 1996 and those taken in 1997, and that this fact belies the argument that Claimant was suffering from cumulative trauma syndrome. (Adjudication, FOF 12(h).) The WCJ, therefore, found Dr. Greene more credible to the extent his opinion differed from Dr. Sedacca's. (COL 16.)

Second, in a related argument, Claimant asserts that there was no competent evidence to support the grant of the termination petition because the CAT scans indicate an L4–5 disc protrusion and L5 radiculopathy. However, while acknowledging a disc protrusion, Dr. Greene clearly stated it was not a disc *herniation* and also stated that it was not related to the work injury. (Report of June 6, 2000, p. 5.) He also clearly opined that, as of his June 2002 evaluation, Claimant had "a full and complete recovery from any and all L5 radiculopathy he may have had on his left leg." *Id.* In addition, he stated, "It is my opinion, within a reasonable degree of medical certainty, that [Claimant] has had a full and complete recovery from any and all injuries that he sustained on 2/14/97." *Id.*

 In a termination petition, the employer bears the burden of proving that the claimant's work-related disability has ceased. *Pistella v. Workmen's Compensa-*

---

1. The experts appear to use the terms MRI and CAT scan interchangeably. No one had argued any prejudice because of this point. We will use the term CAT scan.

2. The reason this CAT scan was ordered is not of record.

*tion Appeal Board (Samson Buick Body Shop),* 159 Pa.Cmwlth.342, 633 A.2d 230 (1993). The detailed and thoughtful analysis contained in Dr. Greene's report, together with his lengthy deposition testimony, supports his medical conclusions. Thus, Employer has met its burden of proof on the termination petition. The fact that the WCJ credited Claimant's evidence of continuing pain does not mean that a termination of benefits is necessarily improper if, as here, the medical evidence found credible demonstrates that any continuing pain is not from the work-related injury. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.),* 550 Pa. 319, 705 A.2d 1290 (1997).

Claimant next argues that Employer is not entitled to a subrogation lien for two reasons: 1) there is no lien allowed against proceeds received from an uninsured carrier, and 2) Employer asserted its lien in an untimely fashion.

Section 319 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671, provides the statutory framework for subrogation issues, and states in pertinent part:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer *shall* be subrogated to the right of the employe ... *against such third party* to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe.... The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe ... and shall be treated as an advance payment by the employer on account of any future instalments [sic] of compensation.

(Emphasis added.)

Claimant first argues that "[a]t the time of the accident [February 14, 1997] the controlling case was *Standish v. American Mfrs. Mutual Insurance Company,* 698 A.2d 599 (1997), wherein the Court held that any claim the [c]laimant had against **his** uninsured motorist carrier was not a claim against a third party tortfeasor and subrogation by a compensation carrier would not be permitted under the Workers' Compensation Act." (Claimant's Brief at p. 8) (emphasis added). He asserts that the law changed *in 2000* when the Superior Court filed its opinion in *Harper v. Providence Washington Insurance Company,* 753 A.2d 282 (Pa.Super.2000).[3] We must determine whether, in this case, Employer had a right to subrogation against proceeds Claimant received from *Employer's* uninsured motorist policy.

Prior to the accident, on July 2, 1993, what is colloquially referred to as Act 44 was signed and became effective 60 days later. That act, *inter alia,* made numerous substantive changes to the Act and the

---

**3.** In *Harper,* the uninsured motorist carrier for employer's policy, which was also its workers' compensation carrier, appealed from an order denying its petition to vacate an arbitration award. The Court held that the employee could recover under the policy, despite policy provisions indicating that the policy would not apply where workers' compensation benefits are available. The Court stated that the action could be maintained, but that subrogation would be allowed.

Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701–1791.

The Supreme Court considered the impact of the Act 44 changes on the MVFRL compensation provisions and, specifically, on the interplay between workers' compensation and uninsured motorist benefits provided by an employer in *Gardner v. Erie Insurance Company*, 555 Pa. 59, 722 A.2d 1041 (1999):

> [I]n cases actually involving employer-purchased insurance, several courts have recognized that the omnibus changes effectuated through Act 44 not only provided for the repeal of Sections 1735 and 1737, [of the MVFRL] but also fundamentally altered the legislative scheme for coordinating benefits available to an employee injured as a result of a vehicular accident. This broader assessment recognizes that, prior to Act 44, while recovery of uninsured motorist benefits from employer-purchased plans was expressly sanctioned and insurers were precluded from crafting policy exclusions or benefit reductions based upon workers' compensation recovery, Section 1722 of the MVFRL barred claimants in tort actions and uninsured motorist proceedings from recovering expenses paid through workers' compensation, ... and, correspondingly, Section 1720 of the MVFRL restrained a workers' compensation carrier's right of subrogation.... *Conversely, after the enactment of Act 44, Section 1722 does not require a reduction of a claimant's recovery in tort and uninsured motorist proceedings by the amount of workers' compensation benefits received, and Section 1720 no longer impedes the rights of subrogation on the part of workers' compensation carriers.* ... Viewed in this context, the repeal of Sections 1735 and 1737 may be seen as an integrated aspect of these comprehensive changes, rather than as reflective of a specific legislative intent to preclude the dual recovery of workers' compensation and uninsured motorist benefits.

*Gardner,* 555 Pa. at 67–68, 722 A.2d at 1045 (footnotes omitted and emphasis added). The *Gardner* Court then proceeded to discuss *Warner v. Continental/CNA Insurance Companies,* 455 Pa.Super. 295, 688 A.2d 177 (1996), *petition for allowance of appeal denied,* 548 Pa. 660, 698 A.2d 68 (1997), a case where, as here, the uninsured motorist policy was held by the employer.[4] Specifically, the Court approved the Superior Court's interpretation of Act 44 as "exchanging one comprehensive system for another." Before Act 44, the workers' compensation carrier "had no right to subrogate against an employee's claim and the employee could not recover from the uninsured motorist carrier any amounts payable under workers' compensation." After Act 44, however, "the employee's recovery from the uninsured motorist carrier is not to be reduced by the amount of any workers' compensation benefits payable, but the workers' compensation carrier is given the right of subrogation for any benefits paid to the employee under workers' compensation." It did not matter that the employee could possibly recover from two sources for the same injury because the recovery creates a fund "against which the workers' compensation carrier can exert a subrogation lien for amounts it paid the employee for the already-recompensed injury." *Gardner,* 555 Pa. at 68–69, 722 A.2d at 1045–46.

Claimant argues, however, that *Standish* (1997), not *Gardner* (1999) or *Warner*

---

4. In *Warner,* the employee filed a petition to compel arbitration of uninsured motorist benefits under the employer's policy. The petition was denied. On appeal, the Superior Court held that the matter was arbitrable.

(1996) sets out the applicable law to apply here. His position is that *Gardner* is distinguishable because it concerned an uninsured motorist policy held by a *co-employee,* whose car the claimant was driving when injured. Similarly, he contends that *Warner* does not apply to him because the relevant discussion of subrogation there was dicta, and that position was not formally adopted until *Harper* was issued in 2000. Thus, asserting that *Standish* applies here, and further asserting that it stands for the proposition that there can be no subrogation by an employer to uninsured benefits received by a claimant under an employer's policy, he argues that no right to subrogation by Employer exists.

We disagree for two reasons. First, *Standish* does not control because it did not address the precise issue before us. There, the uninsured motorist policy was the *claimant's own policy,* not the employer's policy. As this Court explained in *American Red Cross v. Workers' Compensation Appeal Board (Romano),* 745 A.2d 78, 81 (Pa.Cmwlth.2000), *affirmed per curiam,* 564 Pa. 192, 766 A.2d 328 (2001), there is a fundamental difference between "proceeds obtained by a claimant through his *own* insurance policy, be it uninsured or underinsured provisions of that policy, the premiums for which are paid exclusively by the claimant" and proceeds obtained from a third party. (emphasis in original). Consequently, where a claimant receives monies from a policy purchased and paid for by the claimant for his own benefit, the employer does not possess a subrogation right. However, a very different issue is presented when a claimant receives proceeds from a policy, the premiums for which are paid exclusively by employer.

Second, we reject Claimant's argument because the law regarding entitlement to subrogation is governed by *statute,* not case law. In other words, the right to subrogation at issue here emanates from the *statute.* Act 44 became effective in August of 1993, and Claimant's accident occurred in 1997. The fact that no case law had interpreted the effect of the Act 44 amendments on the MVFRL in the factual context present here is simply legally irrelevant.

Finally, Claimant argues that this Court should "apply equitable principles" and refuse to allow Employer to assert its subrogation lien because it did not assert the lien before the Uninsured Motorist Panel. The WCJ found that Claimant's counsel advised Employer and its carrier that an uninsured motorist claim was going to be made under Employer's motor vehicle liability policy in 1997. Employer did not assert a lien, however, until after May 8, 2001, although the arbitration occurred on October 14, 1999. The WCJ found that Employer presented no evidence that its carrier notified Claimant's counsel of the amount of the subrogation lien until almost one and a half years after the arbitration. Concluding, however, that the right to subrogation against a negligent third party was "absolute and unqualified," the WCJ granted the petition to review and ordered Claimant "to satisfy Employer's Worker's [sic] Compensation Subrogation Lien, subject to appropriate calculations being made by use of the requisite Third Party Settlement Agreement." (WCJ Order of 12/21/01.) On appeal, the Board affirmed.

Claimant argues that because he did not have an "opportunity to place the lien before the uninsured motorist panel so it could have been factored into the award ... there was no recovery of any workers' compensation lien, none having been asserted before the Uninsured Motorist Panel." (Brief at 9). Essentially, Claimant is asserting a laches argument, maintaining that because Employer did not assert its subrogation lien promptly, it

should be precluded from doing so now. We note that the Supreme Court discussed, at some length, and rejected, such equitable notions as applied to subrogation under the Act in *Thompson v. Workers' Compensation Appeal Board (USF&G Co.)*, 566 Pa. 420, 431–33, 781 A.2d 1146, 1153–54 (2001), unless the employer undertook "deliberate bad faith." However, we do not need to address whether, under certain circumstances, the equitable doctrine of laches could, nonetheless, be applied in a subrogation case under the Act, because the Claimant here has not met the criteria. Laches applies (1) where no time limitation is applicable, (2) where the complaining party failed to exercise due diligence in instituting an action, and (3) where there is prejudice to the other party. *Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Allen)*, 152 Pa.Cmwlth.318, 618 A.2d 1224 (1992). Claimant argues that he is prejudiced because Employer failed to assert the lien before the uninsured motorist panel so that the lien could have been factored into the award. In other words, he alleges that the arbitration award would have been higher had employer asserted the lien at that time. However, an employer is under no obligation to assert the subrogation lien at the time of arbitration. Assuming, without deciding, that the roughly 20 months from the date of the award that Employer waited before asserting its subrogation claim established lack of due diligence, absent prejudice resulting from those months of Employer's inaction, the doctrine of laches cannot be invoked. Claimant has not alleged that Employer's delay in asserting the claim during the months **after** the arbitration has prejudiced him and there is no evidence of such prejudice. Thus, even if laches could be applied to a subrogation case, it would not lie in this case.

Based on the foregoing discussion, the order of the Board is affirmed.

### *ORDER*

**NOW,** September 26, 2003, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.