**SUPERIOR LAWN CARE and
State Workers' Insurance
Fund, Petitioners**

v.

**WORKERS' COMPENSATION
APPEAL BOARD (HOFFER),
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 6, 2005.

Decided June 17, 2005.

Reconsideration Denied Aug. 12, 2005.

Rhonda A. Rudman, Pittsburgh, for petitioner.

Dennis N. Persin, Greensburg, for respondent.

BEFORE: COLINS, President Judge, FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Superior Lawn Care and State Workers' Insurance Fund (collectively referred to as Petitioners) petition for review of an order of the Workers' Compensation Appeal Board (Board), dated December 13, 2004, reversing an order of a Workers' Compensation Judge (WCJ), which granted Petitioners' petition to review compensation benefit offset pursuant to the Workers' Compensation Act (the Act).[1] We now reverse and remand.

Robert E. Hoffer (Claimant) sustained a work-related injury to his left knee on August 7, 1990, during the course and scope of his employment with Superior Lawn Care (Employer). A notice of compensation payable was issued on September 4, 1990. As a result of the work-related injury, Claimant received temporary total disability benefits, which he was still receiving at the time Petitioners' filed their review petition.

On March 16, 1993, Claimant filed a civil action in the Court of Common Pleas of Westmoreland County (trial court) against John E. Persico and Vina E. Persico. In his civil complaint, Claimant alleged that while working for Employer, he was chased by a dog owned by the Persicos when he arrived to do a lawn treatment application at the Persicos' property. He alleged that he became injured when he ran and jumped into his truck to protect himself from the dog.

On May 6, 1993, State Workers' Insurance Fund (SWIF) notified Claimant that it was asserting a lien against any settlement or verdict in favor of Claimant in connection with the third party action. (R.R. at 147a). Claimant's counsel responded that it was his opinion that subrogation was barred pursuant to Section 1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1720. (R.R. at 148a). It appears that no further discussions took place between the parties regarding this matter, and Claimant did not inform SWIF of his settlement.

On May 17, 2002, Petitioners filed a petition to review compensation benefit offset, seeking a credit for subrogation pursuant to Section 319 of the Act, *as amended* and *reenacted,* 77 P.S. § 671, as a result of a third party recovery. Peti-

---

1. Act of June 2, 1915, P.L. 736, *as amended,*   77 P.S. §§ 1–1041.4; 2501–2626.

tioners allege that Claimant recovered money against which SWIF has a subrogation lien in the amount of $265,967.99. Claimant filed an answer, asserting that Claimant's injury arose in connection with the use of a motor vehicle on August 7, 1990, and that as of that date "there was no subrogation permitted between the Pennsylvania Auto Law [2] and work-related injuries." Claimant denied that Petitioners were entitled to a credit.

Hearings were conducted, at which time the parties presented testimony regarding the manner in which Claimant became injured.[3]

The WCJ found that Claimant's injury to his left knee did not arise out of the use or maintenance of a motor vehicle. Therefore, the WCJ concluded that Section 1720 of the MVFRL was not applicable to preclude Petitioners' entitlement to subrogation. In reaching that finding, the WCJ explained that he found Dr. Goldstrohm's testimony regarding causation to be credible and persuasive. It was Dr. Goldstrohm's opinion that Claimant was injured as a result of running then twisting his knee in a ditch. His opinion was based upon the medical history related to him by Claimant near the time of the injury, medical records from the emergency room and

2. It appears that Claimant is referring to Section 1720 of the MVFRL, which provides as follows:

> In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), section 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits).

Section 25(b) of the Act of July 2, 1993, P.L. 190, repealed that section insofar as it relates to workers' compensation payments or other benefits under the Act.

3. During the first hearing, Claimant testified that on August 7, 1990, he ran down a hill and jumped on to the back of a truck used for his employment and that he hyper-extended his knee as a result of slipping. He testified that his injury resulted from the impact with the truck, and not during the course of running from the residence to the truck. He explained that he landed on the side of the truck when his left foot slipped. As a result of the slip, he experienced excruciating pain.

Employer presented the deposition testimony of Gregg Goldstrohm, M.D., a board certified orthopedic surgeon who was one of Claimant's treating physicians. Dr. Goldstrohm testified that when he examined

Claimant on August 15, 1990, Claimant informed him that he twisted his knee in a ditch while running to jump on the truck to escape from a dog, not that he hyper-extended his knee while jumping on the truck. Dr. Goldstrohm also testified that a file note in the medical records from Claimant's emergency room visit on August 8, 1990, states that Claimant "twisted left knee when stepped in ditch at work." Dr. Goldstrohm diagnosed Claimant as having a grade II effusion or knee sprain. Dr. Goldstrohm performed two surgical procedures on Claimant, before he referred him to another doctor who performed additional surgeries. Dr. Goldstrohm testified that during the surgeries, he found a tear in the posterior of the medial meniscus of the left knee and also multiple loose bodies, which is consistent with an acute injury. He found nothing during either surgery that would rule out either a twisting injury or a hyper-extension injury.

At a subsequent hearing, Claimant testified regarding the statement that he originally filed in the workers' compensation matter. The statement makes reference to two incidents that happened on August 7, 1990. Claimant mentioned that he stepped backward into a hole. In addition, he ran back to his truck after being chased by a dog and injured his knee by twisting it when he jumped on the back of the truck. He testified that he experienced excruciating pain after the incident with the dog. He said that he wrote both incidents in the statement because he wanted to be truthful about what happened.

his physical findings. Additionally, the WCJ determined that Petitioners were entitled to subrogation under Section 319 of the Act. The WCJ ordered that SWIF is entitled to pursue its subrogation interest from the lump sum figure secured by Claimant in the third party litigation, which totaled $103,723.00, and directed Claimant and his counsel to assist SWIF in securing its subrogation lien. Claimant appealed the WCJ's order to the Board.

By order dated December 13, 2004, the Board reversed the WCJ's order. The Board concluded that Petitioners' subrogation claim was precluded by the doctrine of laches. The Board, in reaching that conclusion, noted that Petitioners acknowledged that they were aware of the filing of Claimant's civil action, which occurred on March 16, 1993. The full and final release with the Persicos was executed on April 5, 1994, although Petitioners did not file their review petition until May 17, 2002. Moreover, Claimant asserted that he was prejudiced by the delay. The Board reasoned that Petitioners presented no reason for the delay in filing their review petition. The Board calculated that Petitioners filed their review petition nine years after becoming aware of the filing of the civil action and eight years after Claimant's recovery. Based upon the remedial purposes of the Act and the excessive delay by Petitioners, the Board concluded that the subrogation claim was precluded by the doctrine of laches. Petitioners then filed a petition for review with this Court, which is now before us.

On appeal,[4] Petitioners argue that based upon our Supreme Court's holding in *Thompson v. Workers' Compensation Appeal Board (USF&G Company)*, 566 Pa. 420, 781 A.2d 1146 (2001), an employer's right to subrogation in a workers' compensation case is absolute so that the Claimant may not assert an affirmative defense of laches. Petitioners also argue that even if Claimant could assert an affirmative defense of laches, the facts of the instant case fail to establish that Employer's right of subrogation is precluded. Claimant takes the position that laches may be applied to a claim for subrogation pursuant to Section 319 of the Act. Moreover, Claimant asserts that in order for Petitioners to demonstrate that they may be entitled to subrogation, they must eliminate the involvement of a motor vehicle as contributing to Claimant's injuries. While this argument is not well-developed, it appears that Claimant may be taking the position that Section 1720 of the MVFRL (in its pre–1993–amendment form) is applicable and bars the right of subrogation from Claimant's tort recovery with respect to workers' compensation benefits arising out of the use of a motor vehicle.[5]

4. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. We acknowledge our Supreme Court's decision in *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), wherein the Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Wintermyer*, 571 Pa. at 203, 812 A.2d at 487.

5. In his reply brief, Claimant also argues that Petitioners have precluded themselves from establishing their subrogation claim against the fund created in the third-party action because Petitioners failed to demonstrate that the third-party claim is the same for which they paid compensation. Claimant attempts to make some distinction between whether the claim was paid as a result of his becoming injured when he ran from the home owners' dog and jumped into his truck or when he ran from the home owners' dog and jumped into

Section 319 of the Act establishes an employer's right to subrogation against third-party tortfeasor payments and provides, in part, as follows:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer....

In *Thompson,* our Supreme Court analyzed an employer's right to subrogation in light of equitable principles. The Supreme Court concluded that an employer's right to subrogation is generally absolute, unless the employer engages in deliberate, bad faith conduct. The Supreme Court wrote as follows:

> The statute is clear and unambiguous. It is written in mandatory terms and, by its terms, admits of no express exceptions, equitable or otherwise. Furthermore, it does more than confer a 'right' of subrogation upon the employer; rather, subrogation is automatic.

*Id.* at 428, 781 A.2d at 1151. The Supreme Court further explained as follows:

> [T]his Court cannot ignore the fact that the subrogation right at issue here does not derive from common law judicial authority but, rather, is expressly granted by the Workers' Compensation Act. When the General Assembly adopted subrogation as a statutory matter in the workers' compensation context, it provided for no equitable exceptions that would eliminate the employer's subroga-

tion right. Rather, the General Assembly determined that the employer was entitled to subrogation whenever an employee's injuries, for which the employer paid compensation, were caused by a third party and the employee received a recovery for the compensable injuries from that third party.

It is not difficult to see why the General Assembly might reach such a conclusion. The Workers' Compensation Act balances competing interests. The Act obliges subscribing employers to provide compensation to injured employees, regardless of fault, either through insurance or self-insurance. In exchange, employers are vested with two important rights: the exclusivity of the remedy of worker's compensation and the concomitant immunity from suit by an injured employee; and the absolute right of subrogation respecting recovery from third-party tortfeasors who bear responsibility for the employee's compensable injuries. *This leads to the conclusion that an employer who complies with its responsibilities under the Workers' Compensation Act should not be deprived of one of the corresponding statutory benefits based upon a court's ad hoc evaluation of other perceived 'equities.'* Had the General Assembly intended to introduce such uncertainty into an otherwise balanced and certain scheme of relative responsibility, it could have done so expressly or by use of less certain language. *The General Assembly already having weighed the equities,*

---

a ditch. We must reject Claimant's argument. First, we note that any confusion regarding the precise mechanism of injury is due to Claimant's own contradictory statements as to how he became injured. Second, Claimant stipulated to the identity of the cause of action in the proceeding before the WCJ when his stipulated that the civil action was filed in regard to the work injury. Third,

we note that there was only one knee injury for which Claimant has received compensation through workers' compensation benefits and through the civil action. Finally, we must agree with Petitioners that Claimant has waived any argument that there is no identity of action because he did not preserve it on appeal.

*it would be inappropriate for this Court to approve of ad hoc equitable exceptions to subrogation.*

*Id.* at 431–32, 781 A.2d at 1153 (emphasis added).

The Supreme Court noted that "there may be circumstances where an employer undertakes in deliberate bad faith to subvert a third party suit brought by its employee" and that such circumstances "may require a different calculus." *Id.* at 433, 781 A.2d at 1154. The Supreme Court stated that nothing in its opinion should be "construed as suggesting that subrogation would be appropriate in the face of deliberate, bad faith conduct on the part of the employer." *Id.*, 781 A.2d at 1154.

Based upon the Supreme Court's clear rejection of the use of ad hoc principles of equity to avoid subrogation in *Thompson,* Petitioners take the position that absent deliberate, bad faith conduct on their part, they are entitled to subrogation pursuant to Section 319 of the Act. Claimant on the other hand points to the Court's post-*Thompson* decision in *Mitchell v. Worker's Compensation Appeal Board (Devereux Foundation),* 796 A.2d 1015 (Pa.Cmwlth. 2002), for the proposition that laches is an available affirmative defense in a workers' compensation proceeding. In *Mitchell,* this Court allowed the doctrine of laches to be applied to preclude a claimant from challenging whether the employer properly calculated her average weekly wage when the claimant raised the issue of miscalculation eleven years after the notice of compensation payable was issued.

We must reject Claimant's argument. The Board improperly applied the doctrine of laches to the case at hand. The Supreme Court in *Thompson* was clear when it concluded that an employer's right to subrogation was absolute and automatic in the absence of deliberate, bad faith conduct on the part of the employer. We cannot conclude that Employer or SWIF engaged in deliberate, bad faith conduct in the case at hand. Moreover, we find it significant that *Mitchell* was not a case that in any way dealt with or addressed the issue of subrogation or the applicability of the Supreme Court's decision in *Thompson.* This Court is not prepared to apply the reasoning in *Mitchell* to a case involving subrogation without considering the applicability of *Thompson,* as Claimant appears to suggest.[6,7]

---

**6.** The Board failed to address or acknowledge the Supreme Court's opinion in *Thompson.* The Board cited the post-*Thompson* cases of *Schwaab v. Workers' Compensation Appeal Board (Schmidt Baking Company),* 832 A.2d 1164 (Pa.Cmwlth.2003), and *Mrkich v. Workers' Compensation Appeal Board (Allegheny County Children and Youth Services),* 801 A.2d 668 (Pa.Cmwlth.2002), which arguably leave open the issue of whether there may be certain, narrow circumstances under which the application of the doctrine of laches could preclude an employer from being able to pursue its subrogation claim under Section 319 of the Act. However, Petitioners point out that the Board ignored this Court's recognition in *Schwaab* that the Supreme Court had rejected equitable notions as applied to subrogation. Additionally, Petitioners point out that the Board failed to give any weight to the language in *Mrkich* that laches was only "potentially" applicable as an affirmative defense. Moreover, the Court in *Mrkich* did not address the issue as it related to the Supreme Court's decision in *Thompson.*

**7.** Even assuming for purposes of argument only that the doctrine of laches is applicable to claims for subrogation pursuant to Section 319 of the Act, we would still agree with Petitioners that Claimant has failed to establish that laches acts as a bar to the instant subrogation claim. Claimant failed to demonstrate that he came before the Court with clean hands. By letter dated May 6, 1993, SWIF informed Claimant's counsel that it was placing SWIF on notice of its lien with regard to the third party action. (R.R. at 147a). In response, by letter dated May 13, 1993, Claimant disputed Petitioners' subrogation

Given that the Board reversed the order of the WCJ by concluding that subrogation was prohibited by the doctrine of laches, it did not address in its opinion and order other issues raised on appeal by Claimant.

Accordingly, we must reverse the order of the Board and remand the matter to the Board for consideration of other issues raised on appeal by Claimant that were not addressed in its previous opinion and order.

## ORDER

AND NOW, this 17th day of June, 2005, the order of the Workers' Compensation Appeal Board, dated December 13, 2004, is hereby reversed, and the matter is remanded for further proceedings consistent with the attached opinion.

Jurisdiction is relinquished.

claim and informed SWIF that subrogation was barred by Section 1720 of the MVFRL. (R.R. at 148a). Claimant made such representation even though it was questionable as to whether the action involved the use or maintenance of a vehicle for purposes of Section 1720, given that the civil action sought damages as a result of the careless, reckless or negligent actions of the property owners and their dog. Also, Claimant failed to inform SWIF that a settlement of the civil matter had been achieved, which would have allowed the parties to resolve any outstanding subrogation issues at that time.