# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Craig M. Whitmoyer,                       :
                 Petitioner        :
                                    :
                v.                          :   No. 614 C.D. 2015
                                    :   Argued: September 14, 2016
Workers' Compensation Appeal            :
Board (Mountain Country Meats),         :
                 Respondent        :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE JULIA K. HEARTHWAY, Judge
                HONORABLE JOSEPH M. COSGROVE, Judge


**OPINION**
**BY JUDGE SIMPSON**                 **FILED: December 1, 2016**


In this factually complex workers' compensation appeal involving an employer's subrogation rights, we are asked whether those rights extend beyond indemnity payments and also reach payments toward medical bills. Although this issue has already been decided, new arguments are raised in reliance on recent Supreme Court decisions.

Craig Whitmoyer (Claimant) argues the workers' compensation authorities erred in granting Mountain Country Meats' (Employer) petition to modify a compensation agreement reached after a third-party negligence claim was resolved. The parties refer to the compensation agreement at issue as a "third-party settlement agreement." The modification reflected additional medical

expenses Employer paid for Claimant's 1993 work injury. The third-party settlement agreement contemplated that, after payment of the employer's accrued (past) workers' compensation lien, the $189,416.27 balance of the claimant's third-party negligence recovery would constitute a fund for credit against "future workers' compensation payable."[1] The primary issue is whether the term "compensation" in Section 319 of the Workers' Compensation Act[2] (Act) (relating to subrogation of employer to rights of employee against third persons) encompasses medical expenses in addition to indemnity benefits. Concluding that it does, we affirm.

## I. Background

We summarize the pertinent facts found by the Workers' Compensation Judge (WCJ) and the procedural history as follows. In January 1993, Claimant sustained a work-related amputation of his right arm at the distal forearm. WCJ's Op., 10/17/13, Finding of Fact (F.F.) No. 1; Reproduced Record (R.R.) at 65a.

Several agreements followed, the third of which is the most important now. First, in April 1993, Employer[3] entered into a supplemental agreement that "confined [Claimant's work injury] to the specific loss of the amputation of the

---

[1] Reproduced Record (R.R.) at 64a.

[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §671.

[3] Employer has been and is represented throughout the proceedings by its workers' compensation insurance carrier, Selective Insurance Company of America (Selective). We refer to both Employer and Selective, as pertinent to the discussion, throughout this opinion.

right upper extremity at the distal forearm." F.F. No. 2; R.R. at 66a. The supplemental agreement stated the defined injury entitled Claimant "to a 20 week healing period and 370 weeks of specific loss benefits [at $237.50 per week after 5/22/93]." F.F. No. 2; R.R. at 66a. The supplemental agreement also stated: "The 20 week healing period expires on 5/21/93. Compensation was paid from 1/2/93 thru [sic] 5/21/93 for 20 weeks at a rate of $158.33 per week for a total of $3,166.60, which includes both the waiting period and the healing period." R.R. at 66a.

Second, as memorialized in a December 16, 1994, stipulation of facts signed by Claimant and Employer, Claimant commuted the weekly payments agreed on by the parties in the supplemental agreement into a lump sum payment of $69,994.64 for his specific loss. R.R. at 69a-70a. The stipulation also stated: "[Employer] remains responsible for all reasonable, necessary, and related medical expenses and/or treatment for [Claimant's] work injuries." R.R. at 70a. At this point, Employer's only on-going liability for payments under the Act was for Claimant's medical bills.

Third, about five years later, in April 1999, Claimant and Employer entered into the controlling agreement, the "third-party settlement agreement," reflecting Claimant's recovery of $300,000 from Hollymatic Corporation and Dantro Associates. F.F. No. 3; R.R. at 64a. As to past-paid benefits, the third-party settlement agreement indicates Employer was entitled to a subrogation lien of $110,583.73, minus $28,955.86 for Employer's *pro rata* share of the third-party litigation costs, for a net lien recovery of $81,627.87. R.R. at 64a.

3

What remains at issue here is the rest of Claimant's recovery from the third-party tortfeasor. The balance of the recovery in the negligence claim was $189,416.27. The third-party settlement agreement stated the "BALANCE OF RECOVERY shall constitute [a] fund for credit against future workers' compensation payable, subject to reimbursement to [C]laimant of expenses of recovery at the rate of 37% on credit used." Id. (Emphasis added.) Thus, Employer would be liable to Claimant for 37% of future medical expenses up to the balance of recovery, representing Employer's share of the litigation costs incurred by Claimant in his negligence action. F.F. No. 3. The emphasized language quoted above is the basis for the current contest.

The parties further stipulated: (1) the third-party settlement agreement contains accurate figures and calculations; (2) Claimant reimbursed Selective $81,627.87, the amount of Employer's net lien according to the third party settlement agreement; (3) as of February 2013, Selective paid $206,670.88 in medical benefits for Claimant's work injury; and, (4) Claimant did not pay any amount toward these bills.

About a month later, in a May 26, 1999 letter that included a check for the $81,627.87 accrued (past) lien amount, Claimant's counsel advised Selective "it is [Claimant's] position that no credit can be applied to future medical bills. Instead, under Section 319 such credit only applies to 'future installments of compensation'" and "[f]uture medical expenses [do] not constitute 'installments of compensation.'" R.R. at 63a; see also F.F. No. 5.

4

At this point, the only on-going liability of the Employer under the third-party settlement agreement was to pay Claimant a portion of related medical bills (representing a payment toward litigation costs), until the balance of recovery fund was exhausted.

As stipulated by the parties, Employer paid all the medical bills for several years, while the Claimant did not pay any of his related medical bills. In September 2012, Employer filed its modification petition, which is currently before us. Hearings ensued before the WCJ.

Employer submitted the deposition testimony of Jodi Bell, a current supervisor for Selective, who, during 1998 and 1999 was a claims representative who worked on Claimant's case. F.F. No. 6(a). The WCJ made the following additional findings based on Bell's testimony:

> b. Ms. Bell became aware of a $300,000 settlement.
>
> c. Ms. Bell received the [1999 Supplemental] Agreement, signed it and filed it with the Bureau of Workers' Compensation.
>
> d. She received the $81,627.87 lien reimbursement check and Claimant's counsel's May 26, 1999 letter.
>
> e. Ms. Bell did not have authority to agree to the interpretation of the future installments of compensation as outlined in the May 26, 1999 letter.
>
> f. Ms. Bell did not respond to the May 26, 1999 letter.

5

F.F. Nos. 6(b)-(f). The WCJ found Bell's uncontradicted deposition testimony credible. F.F. No. 7. Claimant did not present any evidence other than the May 26, 1999 letter. F.F. No. 9.

In addition, the WCJ determined the parties agreed that, as of February 2013, Selective paid $206,670.88 in medical bills for Claimant's work injury. F.F. No. 4(c). Claimant did not reimburse Employer or Selective from the balance of recovery fund for any medical expenses paid for Claimant's work injury. F.F. No. 4(d).

Based on his findings and conclusions, the WCJ modified the third-party settlement agreement. In particular, the WCJ modified the percentage of Employer's reimbursement to Claimant of negligence action litigation expenses of recovery from 37% "to 26.09% on credit used for future medical expenses up to $189,416.27."[4] F.F. No. 8.[5]

Claimant appealed to the Workers' Compensation Appeal Board (Board), arguing he never signed the third-party settlement agreement; thus, it was unenforceable. He also asserted the WCJ erred in concluding Section 319 of the

---

[4] As discussed more fully below in note 8, the method of recovery of negligence action litigation expenses is not at issue. Therefore, the "percentage calculation" is not important to our disposition. Claimant took the position that no medical bills should be involved as a matter of law, and that the third-party settlement agreement did not apply to his situation.

The only significance of the "percentage calculation" here is that it concretely evinces the WCJ's rejection of Claimant's positions.

[5] In an Amended/Corrected Decision, the WCJ indicated that, contrary to what he stated in his initial decision, Claimant did, in fact, submit written argument in this matter. In all other respects, the WCJ's initial decision remained unchanged.

Act applies to medical expenses as well as indemnity benefits. The import of Claimant's arguments was that he could retain the entire "balance of recovery."

As to Claimant's assertion that he never signed the third-party settlement agreement, the Board concluded Claimant abandoned that argument by failing to address the issue in his brief. Even if Claimant preserved the issue, Bell's credited testimony belied that position because she indicated that not only did Claimant's counsel prepare the third party settlement agreement, but he remitted payment of Employer's accrued (past) lien pursuant to the agreement. The Board noted that Bell apparently filed this document with the Bureau of Workers' Compensation without objection from Claimant or his counsel.

Further, citing <u>Deak v. Workmen's Compensation Appeal Board (USX Corp.)</u>, 653 A.2d 52 (Pa. Cmwlth. 1994), the Board rejected Claimant's contention that Section 319 of the Act only applied to indemnity benefits. The Board stated: "It is well settled that medical expenses are compensation payments subject to subrogation rights against a claimant's recovery from a third party and subject to a credit toward future compensation where the recovery exceeds compensation paid at the time of recovery." Bd. Op., 3/20/15, at 7.

The Board also rejected Claimant's assertions that the parties entered into a separate contract based on correspondence from Claimant's counsel to Bell (including the May 26, 1999 letter) in which, Claimant argued, the parties agreed credit would not be applied to future medical expenses. The Board reasoned that

7

the letters reflected no express agreement on Selective's part to abide by Claimant's request and no meeting of the minds.

Further, the Board rejected Claimant's assertion that Selective's failure to act in response to those communications resulted in a waiver of Selective's right to a credit for future medical expenses. Finally, the Board rejected Claimant's argument that Employer and Selective should be equitably estopped from asserting a claim for a credit against future medical expenses, concluding Selective never agreed to forego its right to future credit for medical costs, and, although subrogation is an equitable doctrine, the legislature's adoption of the doctrine in the Act, created no equitable exceptions to an employer's subrogation rights. Claimant now petitions for review to this Court.

## II. Issues

On appeal,[6] Claimant asks whether the Board erred in interpreting the phrase "instalments of compensation" in Section 319 of the Act as encompassing medical expenses in addition to indemnity benefits. In the alternative, Claimant asks whether the Board erred in concluding that: (1) no binding agreement existed in which Employer or Selective agreed that no subrogation lien credit would be applied to medical expenses; (2) Employer did not waive or release its rights to a credit for future medical expenses; and, (3) Employer and Selective are not estopped from asserting a credit for future medical expenses.

---

[6] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

8

### III. Discussion
### A. Section 319 of the Act – Meaning of "Compensation"
### 1. Contentions

Claimant first asserts Selective is not entitled to a credit applied to future medical expenses (and thus not entitled to a modification of the payment of medical expenses incurred after satisfaction of a subrogation lien) because medical expenses do not constitute "instalments of compensation" under Section 319 of the Act. Thus, Claimant argues Section 319 of the Act does not allow a credit against medical expenses incurred after payment of a third-party lien.

Claimant contends that, in support of its conclusion that Selective was entitled to a credit against future medical expenses, the Board cited only Deak. He acknowledges that, while that may have been the holding of Deak, the Court in that case relied only on Dasconio v. Workmen's Compensation Appeal Board (Aeronca, Inc.), 559 A.2d 92 (Pa. Cmwlth. 1989) in support of its conclusion. Claimant asserts a close examination of Dasconio calls into question whether the Board properly relied on it in reaching its decision. To that end, Dasconio did not address the precise issue presented here, whether the phrase "instalments of compensation" in Section 319 of the Act includes medical expenses.

Here, Claimant contends, the Board summarily included medical expenses in the definition of "compensation" without appreciating the effect that the phrase "future instalments" has in modifying the term "compensation." Claimant acknowledges that, when used in Section 319's phrase "the amount of compensation paid or payable at the time of recovery or settlement," the term "compensation" includes medical expenses paid to that date. He maintains,

9

however, "compensation" is not defined in the Act, and, as employed in the Act, the term does not always include medical expenses.

To that end, he asserts that in Giant Eagle, Inc. v. Workers' Compensation Appeal Board (Givner), 39 A.3d 287 (Pa. 2012), our Supreme Court's Opinion Announcing the Judgment of the Court (OAJC), states: "When we examine Article III of the Act, the shifting and sometimes uncertain nature of the General Assembly's use of the term 'compensation' is readily apparent. In general, however, Article III uses the word 'compensation' most frequently to denote wage loss benefits." Id. at 291. Claimant argues that, when interpreting what "compensation" may be suspended under Section 314(a), 77 P.S. §651(a), when a claimant fails to attend an ordered examination, the judgment in Giant Eagle was that "compensation" as used in Section 314(a) need not always include medical expenses. Id. at 298.

Claimant asserts that, in applying Section 319 to determine the extent of the credit after satisfying the past lien, the effect of the adjective "instalments" cannot be overlooked. He contends that, in giving effect to the words of the legislature, statutory words should not be interpreted in isolation, but must be read with reference to the context in which they appear.

Claimant maintains the word "installments" appears elsewhere in the Act. In particular, Section 308 provides: "Except as hereinafter provided, all compensation payable under this article shall be payable in periodical installments, as the wages of the employe were payable before the injury." 77 P.S. §601.

10

Claimant argues that while payments for indemnity benefits are clearly installments of compensation, medical expenses, on the other hand, are not to be paid periodically. Instead, Section 306(f.1)(1)(i) of the Act requires the employer to provide payment for medical services "as and when needed." 77 P.S. §531(1)(i) (emphasis added). Claimant maintains that the Supreme Court in Giant Eagle, noted that, given the latter language, "medical expenses are not to be paid in installments …." Id. at 293. Thus, he contends medical expenses cannot be considered part of "instalments of compensation."

Further, Claimant asserts, while considering the context of Section 319 within the Act as a whole, it is worth noting that this Court in Dasconio, considered the language of the Section 306(f)(1) (now Section 306 (f.1)(1)(i)), to expressly declare "the medical expenses aspect of compensation remains an aspect for which the employer is liable—*all* the medical expenses related to the compensable injury." Id. at 228. Claimant argues this is buttressed by Section 306(f.1)(7) of the Act, which states:

> A provider shall not hold an employe liable for costs related to care or service rendered in connection with a compensable injury under this act. A provider shall not bill or otherwise attempt to recover from the employe the difference between the provider's charge and the amount paid by the employer or the insurer.

77 P.S. §531(7).

Thus, Claimant contends imposing a credit on medical expenses incurred after resolution of the subrogation lien violates Section 306(f.1) of the Act. To that end, the employer would no longer be liable for "all the medical

11

expenses," and the claimant would become "liable for costs related to care." Pet'r's Br. at 13.

Claimant further notes the Act must be liberally construed to effectuate its humanitarian objectives. Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder, Jr.), 834 A.2d 524 (Pa. 2003). As such, borderline interpretations are to be construed in the injured party's favor. Id.

Mindful of those principles and giving effect to the language of the sections cited above, Claimant argues, it becomes quite apparent that, when the credit in the amount of third-party recovery or settlement in excess of the prior lien is applied to future compensation, under the terms of Section 319 of the Act, it is only to be applied to those future payments representing indemnity benefits, not medical expenses. Otherwise, Claimant asserts, the word "instalments" is rendered meaningless.[7]

---

[7] Claimant also posits several reasons why the legislature limited the credit's application in this manner. First, keeping in mind the humanitarian objectives of the Act, not changing the employer's obligation following a third-party settlement or recovery provides for payment of medical expenses in an efficient manner, allowing proper medical treatment to the injured worker to continue uninterrupted. Next, an employer or its insurance carrier is in a position to adjust the amount of a provider's bill in a manner that an individual claimant is not able to do. Additionally, Claimant argues, not applying a credit to medical expenses means that the grace period of the credit can be easily determined and the exact length set because only the unchanging weekly compensation obligation is included, while including credited medical expenses creates a bookkeeping nightmare because the dollar amount of medical bills can vary greatly over the course of treatment. Finally, Claimant asserts, the interpretation is consistent with the requirement of Section 306(f.1)(7) of the Act, 77 P.S. §531(7), that only the employer or its insurer is liable for claimant's medical expenses.

12

For these reasons, Claimant contends the Board erred in affirming the WCJ's grant of Employer's petition to modify payment of medical expenses because Section 319 of the Act does not allow a credit against medical expenses incurred after payment of the third-party lien.

## 2. Analysis

Section 319 of the Act provides:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe … against such third party to the extent of the compensation payable under this article by the employer …. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe … and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

77 P.S. §671 (emphasis added).

Our Supreme Court identified several purposes for an employer's right to subrogation:

> [T]he rationale for th[e] right of subrogation is threefold: to prevent double recovery for the same injury by the claimant, to ensure that the employer is not compelled to make compensation payments made necessary by the negligence of a third party, and to prevent a third party from escaping liability for his negligence. Stark v. Posh Construction Co., [162 A.2d 9 (Pa. Super. 1960)]. As Judge Spaeth has noted, '[t]his result is just, because the party who caused the injury bears the full burden; the employee is 'made whole,' but does not recover more than what he requires to be made whole; and the employer, innocent of negligence, in the end pays nothing.' Arnold v. Brobonus, [390 A.2d 271, 274 (Pa. Super. 1978) (Judge Spaeth concurring and dissenting)].

13

Dale Mfg. Co. v. Bressi, 421 A.2d 653, 654 (Pa. 1980).

The notion that employers are entitled to recover from the proceeds of a claimant's third-party recovery up to the total amount is based on long-held policy considerations that Pennsylvania courts recognized in Section 319 of the Act, one of which is that an employer that bears no responsibility for an injury sustained by an employee should reap suitable benefits when a claimant succeeds in suing a negligent actor. The Superior Court, which formerly possessed appellate jurisdiction over appeals from Board orders, held these rationales favoring employers extend to all components of a tort settlement, including pain and suffering. Bumbarger v. Bumbarger, 155 A.2d 216 (Pa. Super. 1959). One noted exception to this rule operates to exclude awards for loss of consortium to an employee's spouse. Darr Constr. v. Workmen's Comp. Appeal Bd. (Walker), 715 A.2d 1075 (Pa. 1998).

In Fortwangler v. Workers' Compensation Appeal Board (Quest Diagnostics), 113 A.3d 28 (Pa. Cmwlth. 2015), we described the two primary periods of benefits entitlement that may be at issue in a subrogation matter:

> An employer's subrogation right is both automatic and absolute, and 'can only be abrogated by choice.' There are two aspects to an employer's subrogation rights: the compensation previously paid to a claimant by an employer is the accrued or 'past' aspect and the credit toward compensation payable is the 'future' aspect to be paid subsequently upon settlement of the accrued lien. Calculation of an employer's future subrogation rights is dependent upon the amount of the claimant's recovery from the third-party settlement and the amount of compensation previously paid to a claimant by the employer. An employer's settlement of its accrued lien for a lesser sum of money has no

14

> bearing on the calculation of the employer's future subrogation rights because the settlement does not change the amount of compensation that the employer previously paid.

Id. at 33 (citations omitted).

Where a claimant obtains a third-party recovery before an employer's duty to make indemnity benefit payments is complete, an employer may realize a "grace period," during which its usual weekly compensation payments may be modified, based on the amount of the recovery. See USX Corp. v. Workmen's Comp. Appeal Bd. (Backos), 606 A.2d 1259, 1261 (Pa. Cmwlth. 1992). Here, no grace period is at issue because Claimant and Employer commuted Claimant's weekly compensation indemnity benefits to a lump sum payment. Instead, this case centers on the nature of the benefits subject to an employer's subrogation lien.[8]

In Deak, this Court, relying on our decision in Dasconio, rejected a claimant's assertion that Section 319 of the Act provided for subrogation only for

---

[8] In Zacour v. Workers' Compensation Appeal Board (Mark Ann Industries), 824 A.2d 336 (Pa. Cmwlth. 2003), this Court addressed the calculation method to be used when a claimant is no longer entitled to indemnity benefits but is still entitled to medical expenses. The only issue before this Court in Zacour was "the correct percentage [the] [e]mployer must pay to [the] [c]laimant to reflect the costs attributable to medical expenses paid from the [b]alance of [r]ecovery." Id. at 340.

Here, Claimant does not challenge the method the WCJ employed in arriving at the modification of the actual percentage of medical expenses for which Employer is required to pay Claimant going forward. Rather, as noted above, the issue here is whether medical expenses are subject to a credit against a balance of recovery in a subrogation matter under Section 319 of the Act. Thus, although the WCJ did not expressly describe the method he used to arrive at the downward shift of Employer's liability to Claimant for expenses of recovery (*pro rata* share of litigation expenses) for his future medical expenses from 37% to 26.09% (up to the $189,416.27 balance of recovery), Claimant does not challenge that calculation.

indemnity benefits. Deak, 653 A.2d at 54. In Dasconio we opined that the reference to "compensation" in Section 319 of the Act encompassed both medical expenses and indemnity benefits. Dasconio, 559 A.2d at 103. More particularly, in Dasconio, we stated the following as to whether or not an employer was entitled to a future credit for the payment of future medical expenses against a balance of recovery received by the claimant in a third-party suit:

> The medical expenses in dispute are only those incurred by the claimant after the date of the tort settlement, when the insurer sought to stop paying for medical expenses on the basis of its view that such expenses should be paid out of the credit toward compensation resulting from the tort recovery.
>
> Without question, [S]ection 306(f) lists payment of medical expenses associated with the compensable injury as a form of compensation. Because [S]ection 319 provides that the employer shall be subrogated 'to the right of the employe … to the extent of compensation payable under this article by the employer', payments of such medical expenses by the employer are compensation payments subject to subrogation rights against a claimant's recovery from a third party, and subject to a credit toward future compensation, where that recovery exceeds compensation paid at the time of the recovery.

Dasconio, 559 A.2d at 103 (footnote omitted, emphasis added).

Nevertheless, Claimant suggests that this Court should reevaluate its decisions in Deak and Dasconio, arguing that those cases do not address the last sentence of the first paragraph of Section 319, which refers to "instalments" (as spelled in the statute) of compensation. Claimant argues medical expenses are generally not paid in "instalments." Focusing on the term "installments," (as usually spelled elsewhere) Claimant contends Section 319 only encompasses indemnity payments an employer makes, and, thus, Employer and Selective are not

16

entitled to a subrogation credit for future *medical* expenses arising from Claimant's work injury.

Deak, however, was not the first time a Pennsylvania appellate court considered whether medical expenses constituted "compensation" under Section 319. In Haley to Use of Martin v. Matthews, 158 A. 645, 646-47 (Pa. Super. 1932), our Superior Court, which, at the time had jurisdiction over workers' compensation appeals, explained (with emphasis added):

> The Legislature evidently intended that where a third person is responsible for an injury to the employee, the employer, who has been subrogated to the employee's right, is substituted, not to a portion of, but to all, his rights, until he is reimbursed for whatever sums he was required to pay the employee under the [Act]. There appears to be no sound reason why an employer should be obliged to pay medical and hospital expenses, when he is in no way responsible for the injury, and the wrongdoer escape liability therefor. The wrongdoer would thus profit at the expense of the employer. In an action at law, the wrongdoer would undoubtedly be liable for medical and hospital expenses--they are proper elements of damages. …

> While no decisions have been quoted, and we have been unable to find any, that are directly in point, there are cases which throw some light on this controversy. For example, Smith v. Yellow Cab Co., [135 A. 858, 860 (Pa. 1927)], which was an appeal from this court, wherein an employer instituted an action in the name of the employee against the wrongdoer. The Supreme Court allowed the employer to recover from the wrongdoer in the sum of $109.60--the sum paid by him under the provisions of the [Act]. The record does not disclose how this sum was made up, but the appellant, in his paper book, stated that the statement of claim showed that it covered hospital and medical expenses. In the course of the opinion, Mr. Justice Simpson said: 'A cursory consideration of that section [(319)] establishes (1) that the employer is not given a right of subrogation only, but is 'subrogated' to the extent of

17

the compensation paid; (2) from the language used, it is fairly to be inferred that the employer may bring suit against the wrongdoer and may retain, out of the recovery, the amount of compensation actually paid by him; and (3) nothing is said from which it can be inferred that a settlement with the employee will bar the claim of the employer to recover the amount thus paid. These conclusions control the present case.' In Wilson v. Pittsburgh B. & I. Works, 85 Pa. Super. Ct. 537 [(1925)], although the question before us was not an issue, it clearly appears from the opinion that the right of subrogation claimed and allowed to the extent of $1,267 included medical and hospital bills. In Scalise v. F. M. Venzie, Inc., [152 A. 90, 92 [(Pa. 1930)], Mr. Justice Kephart, in referring to [Smith], said that what was decided there was 'that section 319 subrogates the employer to whatever … sum he pays the employee or his dependents on account of any injury for which a third person is responsible.'

In Haley, the Superior Court did not address the precise argument Claimant makes here involving the use of the term "instalments." To that end, Claimant correctly notes that the exact argument he presents here has not yet been addressed, whether the legislature's use of the word "instalments" in the last sentence of Section 319 of the Act means that the subrogation provision only provides for such credit for indemnity benefits. Nevertheless, we conclude that the interpretation of the workers' compensation authorities here is correct.

Claimant refers to our Supreme Court's Opinion Announcing the Judgment of the Court (OAJC) in Giant Eagle[9] as support for his assertion that we should interpret Section 319's use of the word "installments" to mean that

---

[9] In Giant Eagle, Inc. v. Workers' Compensation Appeal Board (Givner), 39 A.3d 287 (Pa. 2012), two Justices agreed with the OAJC, three Justices dissented, and the seventh Justice wrote a concurring opinion.

employers are entitled to a right of subrogation for indemnity benefits only and not for medical expenses. Of course, this interpretation conflicts with the rationale set forth above, that an employer, innocent of negligence, is entitled to a subrogation credit up to the full amount of a claimant's recovery. Nevertheless, we examine the Supreme Court's holding in Giant Eagle in light of Claimant's argument.

In Giant Eagle, the Court addressed the issue of whether the word "compensation," as used in Section 314(a) of the Act, encompassed medical expenses as well as indemnity benefits. Section 314(a) imposes a duty on a claimant to submit to a medical examination when requested by an employer. If a claimant fails or refuses to submit to such a request, Section 314(a) provides, among other things, such action "shall deprive him of the right to compensation … during the continuance of such refusal or neglect[.]" Id. The employer in Giant Eagle posed the question of whether a WCJ who issued an order suspending a claimant's indemnity benefits erred in also failing to suspend the claimant's medical benefits, which the employer argued also constituted "compensation" under Section 314(a).

The OAJC noted that the legislature used the term "compensation" in various sections of the Act. In some instances, the term encompasses both indemnity and medical benefits, and in other instances the term excludes medical expenses as "compensation." The OAJC determined Section 314(a) lacked specific clues as to the extent of the meaning of "compensation"; thus, it was ambiguous. To answer the question before it, the OAJC examined other provisions of Article III of the Act as well as statutory construction principles.

19

Here, Claimant argues, Section 308 of the Act, one of the provisions to which the OAJC looked for guidance in Giant Eagle, is an example of an instance in which the term "compensation" does not encompass medical expenses. Section 308 provides: "Except as hereinafter provided, all compensation payable under this article shall be payable in periodical installments, as the wages of the employe were payable before the injury." The OAJC reasoned that because Section 306(f.1) of the Act provides that medical expenses are to be paid "as and when needed," rather than in installments, the term "compensation" as used in Section 308 applied only to indemnity benefits. Giant Eagle, 39 A.3d at 293.

The OAJC in Giant Eagle observed that, as to Section 314(a) of the Act, the term "compensation" "need not always include medical expenses," id. at 298, and a WCJ has discretion as to whether to suspend payments for medical expenses as well as indemnity benefits when a claimant does not submit to an examination. Although Claimant is correct that the OAJC in Giant Eagle specifically referenced the limitations on the term "compensation," such as in its analysis of Section 308 of the Act, we cannot conclude that the OAJC's analysis regarding Section 314(a) of the Act applies to Section 319. All of the opinions in Giant Eagle—the OAJC, the dissenting opinion and the concurring opinion—essentially indicate that, when the legislature uses the term "compensation" ambiguously in a provision of the Act, courts must engage in a case-by-case analysis in order to ascertain legislative intent.

Therefore, in this case, we believe the rationale underscoring the legislature's objective in enacting Section 319 of the Act extends to medical

20

expenses as well as indemnity benefits. In either situation, an employer should be entitled to subrogation because it is presumably an innocent actor. Even if we assume Section 319 of the Act is ambiguous in light of the use of the term "instalments," we reach the same conclusion based on the objectives sought to be attained through Section 319 of the Act. See Section 1921(c) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921(c).

In addition, the legislature's use of the word "instalments" can reasonably be explained and harmonized with the fact that future medical expenses, which generally may occur *periodically* over time, are typically not costs payable in a lump sum. Rather, it is more likely that an employer or insurer will have to make discrete payments on an ongoing basis.

Moreover, contrary to Claimant's assertions, we do not believe Employer's entitlement to a credit for subsequent, additional medical expenses violates Section 306(f.1) of the Act by relieving Employer of liability for such expenses and rendering Claimant liable for costs related to care. Instead, Employer is simply entitled to subrogation for these expenses from the balance of Claimant's third-party recovery, a right expressly agreed upon in the third-party settlement agreement. R.R. at 64a.

In short, we discern no merit in Claimant's position that Section 319 of the Act does not encompass medical expenses as well as indemnity benefits. Thus, we discern no error in the WCJ and Board's interpretations of Section 319 as encompassing both medical expenses and indemnity benefits.

21

## B. Alternative Arguments

In the alternative, Claimant asserts the workers' compensation authorities erred in determining Employer was entitled to a credit to be applied to future medical expenses where the record established: (1) the parties entered into a binding agreement in which it was agreed no credit would be applied to future medical bills; (2) Employer waived or released its Section 319 rights; and, (3) Employer should be estopped from asserting a claim for credit as to future medical expenses.

## 1. Alleged Binding Agreement
### a. Contentions

Claimant first asserts the parties entered into a binding agreement in which it was agreed that no credit would be applied to future medical expenses. To that end, Claimant argues the letters of March 8, 1999 and May 26, 1999, written by Claimant's counsel to Bell of Selective, are part of the record. See R.R. at 51a, 63a. Claimant points out that the March 8, 1999 letter enclosed the third-party settlement agreement, calculating the lien Claimant paid to Employer, which is the subject of this litigation. R.R. at 64a. The May 26, 1999 letter enclosed the payment in full satisfaction of the lien. R.R. at 63a.

Claimant maintains it is clear the third-party settlement agreement was submitted to Employer's representative, Bell, along with the March 8, 1999 letter, for purposes of calculating reimbursement for the workers' compensation lien existing as of that date. The letter specifically states: "By being able to resolve the lien in this manner, I would ask that [Selective] remain responsible for payment of future medical expenses incurred by [Claimant]." Id.

22

Claimant asserts it is also clear that the calculations made regarding the lien in the third-party settlement agreement were later adhered to in that along with the May 26, 1999 letter, Claimant's counsel submitted payment in full satisfaction of the lien to Bell and stated: "Please be advised that it is [Claimant's] position that no credit can be applied to future medical bills. Instead, under Section 319 such credit only applies to 'future installments of compensation.' Future medical expenses does [sic] not constitute 'installments of compensation.'" R.R. at 63a. Thus, Claimant contends the March 8, 1999 letter can be viewed as an "offer letter" and the May 26, 1999 letter as a finalized binding contract containing the definitive terms of the parties' agreement. See Pulse Techs., Inc. v. Notaro, 67 A.3d 778 (Pa. 2013).

Claimant further argues Selective's acceptance of the $81,627.87 payment combined with its conduct of paying medical bills for the ensuing 13 years after the third-party settlement agreement support his position that Selective agreed to Claimant's proposal as set forth in the two letters.

**b. Analysis**

Claimant cites our Supreme Court's decision in Pulse Technologies in support of his argument that the initial letter from his counsel to Bell constituted an offer letter and the second letter from his counsel to Bell resulted in a binding contract. Pulse Technologies, however, is distinguishable. The issue in Pulse Technologies was whether a restrictive covenant to which a prospective employee was required to agree was part of the contractual bargain in the hiring process. In Pulse Technologies, the employer sought an injunction to prevent the employee from accepting work with a competitor, and the employee argued the restrictive

23

covenant was not part of the employment contract he signed. The initial question before the Court was whether a letter describing the terms of an employment offer, including requirements to sign an agreement for employment and an employment contract containing a restrictive covenant, constituted a binding contract. In the context of the employment contract, which the employee signed, the restrictive covenant was deemed an ancillary aspect of the employment agreement. Therefore, it was valid and enforceable. However, the Court concluded the offer letter was only evidence of negotiations and did not itself constitute a contract.

Here, Employer points out that the third-party settlement agreement arose five years after the parties agreed to commute Claimant's indemnity benefits into a lump sum payment. Thus, at the time the parties signed the third-party settlement agreement, Employer and Selective no longer had an obligation to pay such benefits. Rather, the third-party settlement agreement reflected an understanding that Employer and Selective would be entitled to a subrogation credit, a right that would be meaningless unless the parties intended for Employer and Selective to obtain some credit against future medical expenses. We agree with Employer's position.

Accepting Claimant's contention that Employer and Selective intended to be bound to pay future medical expenses without any credit for the subrogation lien would directly conflict with the terms of the third-party settlement agreement. R.R. at 64a. As noted above, subrogation has two components: a payment to reimburse for *past* workers' compensation payments and a credit toward *future* payments. Fortwangler. If we were to accept Claimant's position,

24

both the policy underlying an employer's right to subrogation and the notion of credit for past and future payments for costs arising for a work injury would be rendered meaningless here.

Moreover, Claimant's argument is belied by the fact that through the third-party settlement agreement, the parties agreed that the $189,416.27 balance of Claimant's third-party recovery "shall constitute [a] fund for credit against future workers' compensation payable, subject to reimbursement to [C]laimant of expenses of recovery at the rate of 37% on credit used." R.R. at 64a. Thus, under the terms of the agreement, Employer would be liable to Claimant for 37% of future medical expenses up to the balance of recovery. F.F. No. 3. Claimant's arguments to the contrary would render this contract language illusory.

Further, we reject Claimant's characterization of the letters, as they do not clearly evidence any agreement terms, let alone consideration. Also, while the letters appear to suggest that *Claimant* viewed the payment of approximately $81,000 as a resolution of the entire subrogation lien, the language of the March 8, 1999 letter (in which Claimant's counsel noted "the lien of [Selective] can be satisfied in full with payment of $81,627.87") reflects nothing more than what the parties agreed to in the third-party settlement agreement. R.R. at 51a. This is generally accomplished in a subrogation settlement lump sum payment for *past* workers' compensation indemnity benefits where no *future* indemnity benefits are at issue.

25

In addition, the final paragraph of the March 8, 1999 letter states: "By being able to resolve the lien in this manner, I would ask that [Selective] remain responsible for payment of future medical expenses incurred by [Claimant]." Id. (emphasis added). This statement indicates, at most, a request, and not a condition for payment of the lump sum amount. We view the language as reflecting payment of an agreed amount, representing the liquidated subrogation lien for *past* indemnity and medical expenses Selective already paid. The language Claimant relies on to support his claim that Selective agreed not to seek a subrogation credit against *future* medical expenses simply reflects the status quo. Indeed, there was no question that Selective would remain liable for future medical expenses related to Claimant's work injury. This is all set forth in the third-party settlement agreement. R.R. at 64a. And, as indicated above, the agreement itself makes clear that not only would Selective be responsible for such expenses, but also that Claimant's third-party recovery would remain subject to the subrogation lien. Id.

### 2. Alleged Waiver of Section 319 Rights
### a. Contentions

Claimant next contends where, as here, it is shown that an employer agreed to release its rights to a claim for credit against future medical expenses, Section 319 of the Act does not apply. Claimant argues this Court previously held that an employer can agree to release or waive its right to a credit against future compensation. See Bayush v. Workmen's Comp. Appeal Bd. (Conemaugh Twp.), 534 A.2d 853 (Pa. Cmwlth. 1987).

In Bayush, Claimant asserts, the issue was whether the employer waived or relinquished its rights to a credit against future compensation. In

26

Bayush, like here, Claimant argues, there was an exchange of letters, documents and checks. Claimant maintains that in Bayush, unlike here, the issue of releasing the claim for future credit was never communicated between the parties. This finding (that there was no communication) was the determinative factor that this Court considered in holding the employer did not agree to waive or release its Section 319 rights. However, Claimant contends, application of Bayush compels a different result here as it is clear that Selective's acceptance of the check constituted a waiver or release of Employer's Section 319 rights as to a future credit. Stated differently, Claimant contends, there was appropriate communication between the parties here establishing a wavier or release by Employer.

## b. Analysis

For the reasons set forth above, we reject Claimant's argument that Employer waived its right to a future subrogation credit. Claimant again relies on the letters his counsel sent to Selective to support his claim that Selective's actions—accepting the check and not disavowing the language contained in the letters—resulted in a knowing and binding waiver of its rights.

While an employer may waive such rights, the record must show the waiver was clear and supported by consideration. Fortwangler. Here, the supposed waiver is not clear, and it is not supported by consideration. As explained above, there was no clear waiver of Employer's rights; rather, there was a request from Claimant's counsel addressed to a person without authority to agree to the request. In addition, an authorized agent of Selective did not directly

27

respond to counsel's request, and Selective's subsequent actions were ambiguous. Claimant's arguments to the contrary are not supported by the findings made by the WCJ. Further, Claimant's reimbursement to Selective of the lump sum representing past compensation paid does not constitute consideration, as that payment was one to which Employer was already entitled.

While Claimant attempts to distinguish Bayush, in which this Court determined the record supported a finding that the employer did not agree to relinquish its rights under Section 319, our review of the WCJ's findings here reveal that the proffered distinction is not a valid one. To that end, the WCJ credited Bell's uncontradicted testimony that she received the lien reimbursement check and Claimant's counsel's May 26, 1999 letter, that she lacked authority to agree to the interpretation of the future installments of compensation as outlined in Claimant's counsel's May 26, 1999 letter, and that she did not respond to the May 26, 1999 letter. F.F. Nos. 6(d)-(f), 7; R.R. at 17a-18a; 20a-22a.[10] Based on these findings, the Board properly recognized that "[t]he testimony accepted by the WCJ

---

[10] As the ultimate fact-finder in workers' compensation cases, the WCJ "has exclusive province over questions of credibility and evidentiary weight …." A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). The WCJ may accept or reject the testimony of any witness in whole or in part. Id.

Moreover, "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." Furnari v. Workers' Comp. Appeal Bd. (Temple Inland), 90 A.3d 53, 60 (Pa. Cmwlth. 2014) (citation omitted). We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. Id. If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. Id. Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. Id.

28

undermines Claimant's contention that [Employer] chose to waive its right to further subrogation." Bd. Op. at 9.

In Bayush, this Court reiterated our Supreme Court's holding that "[t]he same elements are necessary to show the existence of an 'accord and satisfaction' as to show the existence of any contract." Id. at 858 (quoting Brunswick Corp. v. Levin, 276 A.2d 532, 534 (Pa. 1971)). A "meeting of the minds" must be shown. Id. (quoting Suits To Use v. Aetna Casualty & Surety Co., 161 A. 592 (Pa. Super. 1932)). Here, as discussed above, no meeting of the minds was shown. Indeed, as the Board explained, "Given the absence of a specific agreement and [Bell's] credible testimony, we cannot agree that Claimant proved the existence of a binding contract preventing relief." Bd. Op. at 8.

### 3. Equitable Estoppel
#### a. Contentions

As a final issue, Claimant contends Employer should be equitably estopped from asserting a claim for credit. As indicated above, Claimant argues Employer sat silent for 13 years and complied with the agreement it entered into with Claimant. Thus, Claimant asserts, if Employer is permitted to modify the third-party settlement agreement, hardship and prejudice to Claimant can be presumed given the nature and severity of his injury and the costs associated with treatment for his work injury.

#### b. Analysis

Claimant does not provide a sufficiently developed argument on this point for this Court to address this issue; therefore, it is waived. City of Phila. v.

Berman, 863 A.2d 156 (Pa. Cmwlth. 2004) (failure to develop issue in argument section of brief constitutes waiver). Further, Claimant points to no record evidence that would support his claim that he will suffer prejudice or hardship.

Moreover, the two essential elements of equitable estoppel are an inducement, and a justifiable reliance on the inducement. Bayush. The party asserting the estoppel bears the burden of proving it by clear and convincing evidence. Id. As the Board aptly recognized, "[b]y virtue of his acceptance of [Bell's] testimony, the WCJ determined that the parties had never agreed to release [Employer's] right to future credit. Thus, there is no admission upon which Claimant can rely." Bd. Op. at 9. As a result, even if we were to address the merits of Claimant's equitable estoppel argument, the record does not support it.

More importantly, in Thompson v. Workers' Compensation Appeal Board (USF&G Company), 781 A.2d 1146 (Pa. 2001), our Supreme Court analyzed an employer's right to subrogation in light of equitable principles. The Court concluded an employer's right to subrogation is generally absolute, unless the employer engages in deliberate, bad faith conduct. It stated: "The statute is clear and unambiguous. It is written in mandatory terms and, by its terms, admits of no express exceptions, equitable or otherwise. Furthermore, it does more than confer a 'right' of subrogation upon the employer; rather, subrogation is automatic." Id. at 1151. The Court further explained:

> [T]his Court cannot ignore the fact that the subrogation right at issue here does not derive from common law judicial authority but, rather, is expressly granted by the [Act]. When the General Assembly adopted subrogation as a statutory matter in the workers' compensation context, it provided for no equitable

exceptions that would eliminate the employer's subrogation right. Rather, the General Assembly determined that the employer was entitled to subrogation whenever an employee's injuries, for which the employer paid compensation, were caused by a third party and the employee received a recovery for the compensable injuries from that third party.

It is not difficult to see why the General Assembly might reach such a conclusion. The [Act] balances competing interests. The Act obliges subscribing employers to provide compensation to injured employees, regardless of fault, either through insurance or self-insurance. In exchange, employers are vested with two important rights: the exclusivity of the remedy of workers['] compensation and the concomitant immunity from suit by an injured employee; and the absolute right of subrogation respecting recovery from third-party tortfeasors who bear responsibility for the employee's compensable injuries. This leads to the conclusion that an employer who complies with its responsibilities under the [Act] should not be deprived of one of the corresponding statutory benefits based upon a court's *ad hoc* evaluation of other perceived 'equities.' Had the General Assembly intended to introduce such uncertainty into an otherwise balanced and certain scheme of relative responsibility, it could have done so expressly or by use of less certain language. The General Assembly already having weighed the equities, it would be inappropriate for this Court to approve of *ad hoc* equitable exceptions to subrogation.

Id. at 1153 (emphasis added); see also Superior Lawn Care v. Workers' Comp. Appeal Bd. (Hoffer), 878 A.2d 936 (Pa. Cmwlth. 2005) (reversing Board order that determined an employer's right to subrogation was barred by doctrine of laches based on the employer's eight-year delay in asserting its rights in the absence of deliberate, bad faith conduct by the employer).

However, the Court noted, "there may be circumstances where an employer undertakes in deliberate bad faith to subvert a third party suit brought by

31

its employee" and that such circumstances "may require a different calculus." Id. at 1154. The Supreme Court stated nothing in its opinion should be "construed as suggesting that subrogation would be appropriate in the face of deliberate, bad faith conduct on the part of the employer." Id.

Here, Claimant makes no assertion that Employer or Selective engaged in any deliberate, bad faith conduct. Further, the WCJ made no such findings. As such, even if Claimant fully developed his equity arguments,[11] it is unclear how they could compel the result he seeks in light of our Supreme Court's pronouncements in Thompson.

## IV. Conclusion

For all the foregoing reasons, we affirm the Board's order that affirmed the WCJ's decision granting Employer's petition to modify the third-party settlement agreement.

---

ROBERT SIMPSON, Judge

---

[11] In a footnote, Claimant asserts: "For all the reasons set forth in this Brief, Claimant also submits that the equitable defense of laches is applicable here while at the same time acknowledging the cases of Thompson v. [Workers' Comp. Appeal Bd. (USF&G Co.)], 781 A.2d 1146 (Pa. 2001); Superior Lawn Care [v. Workers' Comp. Appeal Bd. (Hoffer), 878 A.2d 936 (Pa. Cmwlth. 2005)]." Pet'r's Br. at 18 n.16. As with his equitable estoppel claim, Claimant does not develop this argument; thus, it is waived. City of Phila. v. Berman, 863 A.2d 156 (Pa. Cmwlth. 2004). Further, as Claimant appears to concede, even if properly preserved, this claim would fail based on the Supreme Court's decision in Thompson, discussed at length above.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Craig M. Whitmoyer,               :
                    Petitioner   :
                              :
        v.               :    No. 614 C.D. 2015
                              :
Workers' Compensation Appeal    :
Board (Mountain Country Meats),   :
               Respondent   :

# **O R D E R**

**AND NOW**, this 1st day of December, 2016, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Craig M. Whitmoyer,           :
                    Petitioner :
                              :
        v.                    : No. 614 C.D. 2015
                              : Argued: September 14, 2016
Workers' Compensation Appeal   :
Board (Mountain Country Meats), :
                    Respondent :


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE ROBERT SIMPSON, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE JULIA K. HEARTHWAY, Judge
            HONORABLE JOSEPH M. COSGROVE, Judge

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: December 1, 2016

The thorough and well-written opinion of the majority construes "compensation" in Section 319 of the Workers' Compensation Act (Act)[1] to mean both medical and disability compensation whenever it appears in Section 319. However, the majority's construction gives no effect to the word "instalment" and, thus, I respectfully dissent.

On January 2, 1993, Craig Whitmoyer (Claimant) lost part of his right arm in an accident while working for Mountain Country Meats (Employer), entitling him, *inter alia*, to a specific loss benefit of 370 weeks of compensation. In December 1994, the parties commuted Claimant's specific loss benefits for a lump-sum payment of approximately $70,000, which left Employer responsible

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §671.

only for medical expenses. Claimant subsequently received a tort claim recovery for his work injury in the amount of $300,000 from Hollymatic Corporation and Dantro Associates, Inc.

On May 26, 1999, Claimant's counsel remitted a check in the amount of $81,627.87 to satisfy Employer's net subrogation lien along with a letter that stated, in relevant part, as follows:

> Enclosed please find our check in the amount of $81,627.[87], representing full payment of the workers' compensation lien in this matter.
>
> Please be advised that it is the claimant's position that no credit can be applied to future medical bills. Instead, under Section 319 such credit only applies to "future installments of compensation." *Future medical expenses does not constitute "installments of compensation."*

Reproduced Record at 63a (R.R. __) (emphasis added). Because Claimant was no longer entitled to disability benefits and had commuted his specific loss benefits, Claimant believed that he was entitled to retain the entire remaining balance of the third-party recovery. Employer did not respond to Claimant's letter.

For the next 13 years, Employer paid Claimant's medical expenses, primarily for repair and replacement of his prosthetics. At no point during this period did Employer assert a right of reimbursement from the balance of Claimant's third-party recovery for these medical expenses. Then, in 2012, Employer filed the instant modification petition. Claimant responded that the modification should be denied for two reasons: Employer was not entitled to any credit against future medical expenses under Section 319 of the Act and,

alternatively, Employer had waived its right to subrogate its payment of future medical expenses.

Section 319 of the Act provides that an employer who pays workers' compensation is subrogated to the right of the claimant against a third-party tortfeasor who caused the injury. Section 319 states, in relevant part, as follows:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party *to the extent of the compensation payable under this article* by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that *the amount of compensation paid or payable at the time of recovery* or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any *future instalments of compensation*.

77 P.S. §671 (emphasis added).

The instant case turns on the meaning of the phrase "future instalments of compensation" found in Section 319.[2] Claimant acknowledges that Employer's accrued lien, *i.e.*, "the amount of compensation *paid or payable at the time of recovery*" set forth in Section 319, includes both disability benefits and

---

[2] The phrase "future instalments of compensation" was present in the original 1915 version of the Act.

medical expenses. 77 P.S. §671 (emphasis added). As such, Employer was entitled to be reimbursed for specific loss benefits and medical benefits it had paid up to the time of the third-party recovery. Claimant Brief at 10. However, Claimant argues that the "future instalments of compensation" refers only to future disability benefits and not future medical expenses.

In support, Claimant directs our attention to *Giant Eagle, Inc. v. Workers' Compensation Appeal Board (Givner)*, 39 A.3d 287, 298 (Pa. 2012), wherein our Supreme Court explained that the term "compensation," which appears in various contexts throughout the Act, "need not always include medical expenses." Claimant urges that we cannot ignore the word "instalments" which, he argues, can refer only to disability benefits. They are paid in weekly installments. By contrast, medical expenses are paid sporadically.

In further support, Claimant points to other provisions in the Act that link "instalment" to disability compensation. For example, Section 308 of the Act states, in relevant part, that "compensation payable under this article shall be payable in periodical *installments, as the wages of the employe were* payable before the injury." 77 P.S. §601 (emphasis added). By contrast, Section 306(f.1)(1)(i) of the Act states that the "employer shall provide payment [for medical services] *as and when needed.*" 77 P.S. §531(1)(i) (emphasis added). In short, the phrase "instalments of compensation" in Section 319 denotes regular payments made to replace wages. Medical compensation payments are sporadic and made "as and when needed."

Limiting "future instalments of compensation" to disability is logical because it is an amount that can be easily computed for purposes of settlement.

Further, payments of disability benefits are made directly to a claimant. By contrast, medical benefits are remitted to a provider, not to the claimant, and in varying amounts after the employer adjusts the provider's invoice in accordance with the medical cost containment guidelines. It creates a "bookkeeping nightmare" to keep track of the rate at which a claimant's balance of recovery is being depleted for medical expenses. Claimant Brief at 14.

The Act makes the employer responsible for all medical expenses related to the work injury, and a provider cannot hold the claimant responsible for any medical costs. Section 306(f.1)(7) of the Act, 77 P.S. §531(7). Giving the employer the right to recover medical expenses, after the accrued subrogation lien is resolved, effectively makes the claimant liable for future treatment of his work injury. This shift of responsibility from the employer to the claimant turns the statutory scheme on its head.

This is a case of first impression. Our courts have never interpreted the specific phrase "future instalments of compensation." The word "installment" is defined as "one of the parts into which a debt is divided when payment is made at intervals." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 605 (10th ed. 2001). Payment of disability benefits are "made at intervals," and medical expenses are not. With respect to "compensation" in Section 319, the legislature used different terminology. Section 319 refers to "compensation *paid or payable* at the time of recovery or settlement" and then to "*future instalments* of compensation." (emphasis added). Instead of "payments," which would be symmetrical with "paid or payable," the legislature chose a different word, "instalments." I believe the

MHL-5

choice was deliberate and intended to limit "compensation" to disability, which is paid at regular intervals.

In the alternative, Claimant argues that Employer waived its Section 319 rights. In support, Claimant relies on *Bayush v. Workmen's Compensation Appeal Board (Conemaugh Township)*, 534 A.2d 853 (Pa. Cmwlth. 1987), which established that an employer can waive its right to a credit for future compensation. In *Bayush*, we held that the employer had not done so because the insurance adjuster credibly testified that the issue had not been discussed. Claimant argues that unlike *Bayush*, the issue of responsibility for future medical expenses was discussed at the time of settlement. For the next 13 years, Employer acted in accordance with Claimant's view that the "future compensation" reference in the settlement agreement (LIBC-380) did not encompass medical expenses. R.R. 64a. Nor did Employer require the balance of the recovery be placed in escrow so that it could be drawn upon "as and when needed" to pay Claimant's medical expenses. The course of Employer's conduct expresses an implicit waiver of its right to claim a credit against Claimant's recovery.[3]

In Section 319, the legislature used the phrase "compensation paid or payable at the time of recovery" to effect the proration of the settlement at the time the "compromise settlement" is entered into by the claimant and the employer. The amount "in excess" thereof is an advance on "future instalments of compensation." The legislature did not say "future payments of compensation,"

---

[3] Any statutory right can be waived. I disagree that waiver of a statutory entitlement requires consideration to be effective. *Fortwangler v. Workers' Compensation Appeal Board (Quest Diagnostics)*, 113 A.3d 28 (Pa. Cmwlth. 2015), is distinguishable because it did not deal with the precise issue here, which is the meaning of "instalments."

MHL-6

which is how the majority construes the phraseology.  I believe the legislature's choice of the phrase "instalments of compensation" was deliberate, and it was intended to limit an employer's future credits to disability compensation only.

For these reasons, I would reverse the Board's modification.

_____
MARY HANNAH LEAVITT, President Judge


Judges McCullough and Cosgrove join in this dissenting opinion.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Craig M. Whitmoyer,                          :
                        Petitioner            :
                                              :
            v.                                :
                                              :
Workers' Compensation Appeal                 :
Board (Mountain Country Meats),              :    No. 614 C.D. 2015
                        Respondent            :    Argued:  September 14, 2016


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


DISSENTING OPINION
BY JUDGE COSGROVE                      FILED:  December 1, 2016


           I agree with the President Judge's dissenting opinion and write
separately to emphasize two points:

           As this case hinges on interpretation of the phrase "future installments
of compensation," the Majority opinion defies the basic, common understanding of
just what an "installment" is, namely:  "one of the parts into which a debt is divided
when payment is made at intervals."   Merriam-Webster. http://www.merriam-
webster.com/ (last visited November 21, 2016).  Clearly, a certain regularity is
attached to the concept of "interval," something which may clearly apply to the
term "future disability benefits," but is not so easily attached to "medical

expenses," as they usually arise (as in this case) with no certainty. The Majority, however, conflates these two discrete concepts.

I am further disturbed by the failure of the Majority to find waiver, given the Employer's more than decade long acquiescence in what Claimant understood as the intended resolution of the subrogation lien question. Claimant's counsel outlined this understanding in a clear and concise letter which Employer not only failed to challenge but instead, consistent with that understanding, paid Claimant's medical bills as they arose over the course of thirteen years. This can only be considered waiver, but Employer's challenge now to this longstanding arrangement mocks the certainty which the resolution of the subrogation lien intended.

For these reasons, I must dissent.

_____
JOSEPH M. COSGROVE, Judge

President Judge Leavitt and Judge McCullough join this dissent.